# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SUSAN ANSPAUGH,

      Plaintiff,                            Case No.
                                                     Hon.

v.

LITTLE CAESAR ENTERPRISES, INC.,

      Defendant.

---

Noah S. Hurwitz (P74063)
Nacht, Roumel & Hurwitz, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Susan Anspaugh, by and through her attorneys, NACHTLAW, P.C., and brings this action against Defendant Little Caesar Enterprises, Inc., and hereby alleges the following:

## INTRODUCTION

For nearly six years, Susan Anspaugh served Defendant Little Caesar Enterprises, Inc. in an exemplary fashion as one of the lone female managers in the male-dominated information technology ("IT") division. Despite receiving

"Excellent" and "Role Model" performance evaluations and taking ownership of more projects than any other IT Manager, she suffered from Defendant's implicit bias against women in the form of being denied promotion, referred to as one of the "communication ladies," paid less than her male colleagues, told to be more submissive, and admonished for expressing her opinions. On July 30, 2020, Ms. Anspaugh was verbally berated by a male colleague as she spoke to a large group of her peers. After being told by her direct supervisor that Defendant was investigating the incident, she was terminated under the guise of an "ongoing workplace restructure." After Ms. Anspaugh retained an attorney, Defendant pivoted and blamed her "poor performance" for the termination, despite her strong credentials, quantity of direct reports, ownership of critical projects, and stellar work record. As for Defendant's purported "investigation" into the July 30, 2020 incident, no investigation occurred. Instead, Defendant removed Ms. Anspaugh's SharePoint rights and her global administrative privileges days before any investigation occurred and then terminated her the following week. Asked to defend the timing of Ms. Anspaugh's termination, Defendant issued a series of fabricated performance criticisms that have no basis in fact. The male colleague who screamed at Ms. Anspaugh in front of dozens of colleagues was not disciplined for his behavior.

## PARTIES, JURISDICTION, AND VENUE

1. This is an action alleging sex discrimination, hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e and sex discrimination in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and seeking equitable, declaratory, and injunctive relief and money damages against Defendant, as set forth herein.

2. Plaintiff Susan Anspaugh ("Plaintiff") is a resident of Farmington Hills, Oakland County, Michigan within the Eastern District of Michigan.

3. Defendant Little Caesar Enterprises, Inc. ("Defendant") is a domestic profit corporation with its resident agent located in Detroit, Wayne County, Michigan, and doing business within this judicial district.

4. Defendants is an employer and Plaintiff was an employee within the meaning of Title VII and ELCRA.

5. This Court has jurisdiction pursuant to 42 U.S.C. §2000e (Title VII of the Civil Rights Act); 29 U.S.C. §206(d) (Equal Pay Act); 28 U.S.C. §1331 (federal question jurisdiction); and 28 U.S.C. §1343(a)(4) (jurisdiction over civil rights claims).

6. Venue in this Court is proper pursuant to 28 U.S.C. §1391, as a substantial part of the events and omissions giving rise to this Complaint occurred in Detroit, Wayne County, Michigan, located within this judicial district.

7. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex (female) and retaliation.

8. Plaintiff's charge was within 300 days of the commission of the unlawful employment practices alleged in this claim.

9. Plaintiff received notice of her right to sue on September 15, 2021, and she has filed this complaint within 90 days of her receipt of her notice of rights.

## STATEMENT OF FACTS

10. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

11. Plaintiff, a female, began her employment with Defendant on or about December 15, 2014, as a SharePoint Architect.

12. Plaintiff elevated herself to a Manager of Digital Applications before her termination on August 21, 2020.

13. Plaintiff took on major aspects of CV to the Cloud, a top priority project, and was tasked with assignments involving authentication, permissions, and logins.

14. Plaintiff always performed her duties and responsibilities diligently and to a high degree of satisfaction.

15. Plaintiff's last four performance reports gave her "Excellent" and "Role Model" evaluations.

16. Male supervisors of Defendant regularly belittle female employees in the IT Department.

17. Plaintiff's performance was often disregarded, and her supervisors credited the work she completed to her male counterparts.

18. The Vice President of Digital Operations supervised Plaintiff and regularly undermined her contributions to the company.

19. Plaintiff witnessed other female coworkers who joined her IT team as Leads receive inferior pay to male counterparts in the same position. Plaintiff raised this issue with Defendant, and her concerns were ignored and dismissed.

20. Plaintiff witnessed other female coworkers be rejected from opportunities of advancement within Defendant regardless of their qualifications and time with the company.

21. Plaintiff came to oversee and direct an intern within the IT Department at Defendant. She took interest in this female intern because she was the only female intern, and the only intern not being offered work—having been passed over for important project opportunities. The female intern was regularly made to cry because of her treatment by Defendant's Human Resource employees.

22. Plaintiff experienced implicit gender bias in her performance reviews that encouraged her to be more submissive in group meeting with her mostly male colleagues and was told that her communication skills were lacking.

23. Plaintiff's 2015 performance review criticized her for needing to learn how to "read the room" and pick "appropriate opportunities to voice opinions." Plaintiff was also encouraged to "[d]evelop stronger communication skills for communication to an executive [*i.e.*, male] audience."

24. Plaintiff's 2018 performance review encouraged her to "work on saying no to requests" and resist "trying to help everyone" due to the "excessive hours" that she was working.

25. Plaintiff's 2019 performance review encouraged her to "really improve on 'reading the room' in meetings" and she was admonished for "defending a position or jump[ing] in and correct[ing] something in a discussion at the wrong time."

26. Plaintiff worked upwards of 90 hours a week to meet deadlines, complete projects, and establish her expertise in the field where her male supervisors did not give credit to her work; all while being told she was on the path to becoming a Director.

27. In 2020, Plaintiff's ongoing anxiety of having to prove herself and win over her supervisors resulted in a stress-related heart attack. In fact, Plaintiff's

dedication to Defendant never ceased, as she continued to work from the hospital so she could return to the office with all of her projects on track for success, which was never acknowledged by her superiors.

28. Plaintiff was inevitably denied promotion to the "Director" position and was told to not take it personally because she is paid a higher salary than "them," which refers to higher ranking male colleagues.

29. On July 30, 2020, Plaintiff attended a weekly IT meeting with approximately forty (40) of her peers.

30. During this meeting, Plaintiff was mid-sentence, discussing the need for her team to generate a replacement IT product by November 1, 2020, when supervisor Jeff Lang loudly injected that the issue should have "been brought to SRE [*i.e.*, his team]" and reprimanded Plaintiff for alleging that she had not tried to involve Mr. Lang on the project.

31. Mr. Lang verbally abused Plaintiff before the group, ultimately yelling at her to "MOVE ON! MOVE ON! MOVE ON!" His abuse left plaintiff mentally, emotionally, and physically shaken, which was observed by the roughly forty other team members at the meeting.

32. On or about August 19, 2020, Plaintiff reported the incident to Human Resources Business Partner Jeff Ambrosia, and her direct supervisor, Director of Enterprise Applications Jon Bentley, and requested for them to interview two

7

attendees who were each willing to describe Mr. Lang's verbally abusive behavior during the meeting.

33. Plaintiff, to the best of her knowledge, does not believe that either Mr. Ambrosia or Mr. Bentley spoke with the two team members regarding the incident. Instead, Mr. Bentley told Plaintiff that her global access rights were being removed due to the direction of "someone higher up" in retaliation for the Lang incident.

34. Plaintiff has personal knowledge of other females in the workplace who have likewise been verbally attacked by Mr. Lang for similar or lesser infractions, including a female Manager, Brook Dove, who was harangued by Mr. Lang in front of an audience. Employees were informed that Mr. Lang would be coached on his behavior, yet he never was.

35. Plaintiff has never seen or heard Mr. Lang yell at and verbally abuse male employees.

36. On August 21, 2020, Defendant terminated Plaintiff for "poor performance" just ten days after she was told by Mr. Bentley and Mr. Ambrosia that the company was investigating the incident with Mr. Lang.

37. Upon termination Plaintiff received a severance package offer of $17,022.12 and a separation agreement intended to immunize the company from liability. Plaintiff refused to sign.

38. Within the separation agreement, Defendant provided a "decision unit" analysis that includes thirty-six other employees who were allegedly considered for termination. Plaintiff is the only individual Defendant terminated from its list, and her performance of duties surpasses any of the men who were considered for termination.

39. Plaintiff was terminated under the guise of an "ongoing workplace restructure." However, Defendant experienced fiscal growth in 2019 and 2020 because of the ongoing COVID-19 pandemic. Indeed, Defendant earned $3.85 billion in revenue in 2019, a 1.3 percent increase year-over-year, which resulted in hiring workers at various levels, such as hourly employees, assistant managers, managers, and manager trainees.

40. Because no other employees considered in the "decision unit" analysis were terminated, Plaintiff's termination is not in furtherance of a true reduction in workforce.

41. Since Plaintiff's termination, Defendant has constantly advertised to solicit job applicants into its "growing" IT division.

42. Defendant's employees always receive a performance improvement plan when discipline is merited. Plaintiff is not aware of a time where a colleague was terminated without any sort of progressive discipline. However, Plaintiff was terminated unceremoniously without valid explanation.

43. Plaintiff's termination for "poor performance" is pretext for termination given the temporal proximity between Mr. Lang's verbal abuse of Plaintiff and Defendant's adverse employment decision.

44. Plaintiff's termination occurred after Mr. Bentley commended her for doing a "great job with CV to the Cloud," which is a critical IT effort that Plaintiff and her team have been repairing for Defendant.

45. Prior to her termination, Defendant's President and CEO invited employees to take part in a Diversity & Inclusion feedback discussion due to the company's ongoing diversity issues.

46. Plaintiff, in her desire to help improve work culture, met with Defendant's agents on June 15, 2020 and conveyed her candid views on race and gender discrimination in the workplace.

47. Because of her termination shortly thereafter, Plaintiff believes that this supposedly confidential discussion factored into her termination.

48. Plaintiff was terminated the day after requesting to meet with Defendant's Chief Information Officer regarding her diversity concerns.

## COUNT I
## SEX DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

49. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

50. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

51. Plaintiff is a member of a protected class based on her sex (female).

52. Defendant's actions were motivated by unlawful discrimination against Plaintiff because of her sex.

53. Defendants subjected Plaintiff to adverse employment actions, including but not limited to failure to promote and termination of employment.

54. But for Plaintiff's sex, Defendant would not have subjected Plaintiff to such adverse employment actions.

55. Defendants' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

56. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

57. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT II
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

58. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

59. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

60. Plaintiff is a member of a protected class based on her sex (female).

61. During Plaintiff's employment, Defendant's male supervisors regularly demeaned Plaintiff in a way that was intended to and did substantially interfere with Plaintiff's employment.

62. This unwelcome conduct created a hostile work environment based on Plaintiff's sex.

63. This conduct was objectively and subjectively offensive such that a reasonable person would find it hostile or abusive.

64. Plaintiff found this conduct both objectively and subjectively offensive.

65. Defendant had actual and constructive notice that its employees had created a or sex-based hostile and offensive work environment for Plaintiff.

66. Plaintiff opposed and appropriately reported the unwelcome and offensive conduct to Defendants.

67. Defendant failed to take effective remedial action to stop the harassment.

68. Defendant's actions were taken with reckless disregard for Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

69. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

70. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT III
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e

71. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. At all relevant times, Defendant was an employer with greater than 15 employees and Plaintiff was an employee covered by and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e(b).

73. Plaintiff engaged in protected activity by complaining about gender discrimination to Defendant and requesting a meeting to discuss the same.

74. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to her protected activity.

75. Defendant subjected Plaintiff to adverse employment actions including but not limited to termination.

76. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

77. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

78. As a direct and proximate result of Defendant's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

79. As a further direct and proximate result of Defendant's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## COUNT IV
## **VIOLATION OF THE EQUAL PAY ACT OF 1963: 29 U.S.C. § 206(d)**

80. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

81. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

82. Defendant owed plaintiff a duty not to discriminate against her with respect to her compensation on the basis of her sex.

83. Plaintiff is a woman and otherwise a member of a protected class entitled to the protections afforded by the Equal Pay Act due to her sex (female).

84. Defendant and their agents, servants, and/or employees failed to pay Plaintiff equal wages as compared to comparable male employees for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

85. Such payments were not made pursuant to a seniority system, a merit system, a system which measures earnings by quantity of quality of production, or a differential based on any factor other than sex.

86. Defendant's violation of the Equal Pay Act was willful.

87. But for Plaintiff's sex, Defendant would not have subjected her to unequal conditions of employment.

88. As a direct and proximate result of Defendants' actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of her earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## RELIEF REQUESTED

For the foregoing reasons, Plaintiff Susan Anspaugh prays that this Honorable Court grant the following relief:

- Declare that the aforementioned practices and actions of Defendants constitute unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and the Equal Pay Act;
- Award Plaintiff all lost wages, past and future, to which she is entitled;
- Award Plaintiff compensatory damages;
- Award Plaintiff punitive and exemplary damages;
- Award Plaintiff reasonable attorney's fees, costs, and interest; and
- Award such other relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this Complaint.

Respectfully submitted,

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Nacht, Roumel & Hurwitz, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

Dated: September 27, 2021

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SUSAN ANSPAUGH,

       Plaintiff,                      Case No.
                                              Hon.

v.

LITTLE CAESAR ENTERPRISES, INC.,

       Defendant.

---

Noah S. Hurwitz (P74063)
Nacht, Roumel & Hurwitz, P.C.
Attorneys for Plaintiff
101 N. Main St., Ste. 555
Ann Arbor, MI 48104
(734) 663-7550
nhurwitz@nachtlaw.com

---

## **JURY DEMAND**

Plaintiff, Susan Anspaugh, by and through her attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues in the above-captioned cause of action.

                                                      Respectfully submitted,

                                                      /s/ *Noah S. Hurwitz*
                                                      Noah S. Hurwitz (P74063)
                                                      Nacht, Roumel & Hurwitz, P.C.
                                                      Attorneys for Plaintiff
                                                      101 N. Main St., Ste. 555
                                                      Ann Arbor, MI 48104
                                                      (734) 663-7550

Dated: September 27, 2021                        nhurwitz@nachtlaw.com